UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| AMY T., | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO.: 1:21-CV-15-JVB |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner | ) |
| of the Social Security Administration, | ) |
|     Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Amy T. seeks judicial review of the Social Security Commissioner's decision denying her application for disability insurance benefits and asks this Court to reverse that decision and remand this matter for an award of benefits or, in the alternative, for further administrative proceedings. For the reasons below, this Court grants Plaintiff's request, reverses the Administrative Law Judge's decision, and remands this matter for further administrative proceedings.

**PROCEDURAL BACKGROUND**

In Plaintiff's August 30, 2018, application for benefits, she alleged that she became disabled on April 15, 2016. After a March 16, 2020 hearing, the Administrative Law Judge (ALJ) issued her decision on June 25, 2020, and found that Plaintiff suffered from the severe impairment of systemic lupus unspecified. (AR 18). The ALJ determined that Plaintiff did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and further determined that Plaintiff had

> the residual functional capacity [RFC] to perform light work as defined in 20 CFR 404.1567(b) except can frequently climb stairs, or ramps, stoop, kneel, crouch, or crawl; and can never climb ladders, ropes or scaffolds. No concentrated exposure to extreme cold, extreme heat; and must avoid all exposure to moving machinery or unprotected heights.

(AR 21-22). The ALJ found that, in light of Plaintiff's RFC, Plaintiff was able to perform the representative occupations of cashier, housekeeping cleaner, and sales attendant. (AR 27). Accordingly, the ALJ found Plaintiff to be not disabled from April 15, 2016, through June 25, 2020, which is the date of the ALJ's decision. This decision became final when the Appeals Council denied Plaintiff's request for review.

## STANDARD OF REVIEW

This Court has authority to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court will ensure that the ALJ built an "accurate and logical bridge" from evidence to conclusion. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). This requires the ALJ to "confront the [plaintiff's] evidence" and "explain why it was rejected." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016). The Court will uphold decisions that apply the correct legal standard and are supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support [the ALJ's] conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

## DISABILITY STANDARD

The Commissioner follows a five-step inquiry in evaluating claims for disability benefits under the Social Security Act:

> (1) Whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether she can perform her past relevant work; and (5) whether the claimant is capable of performing any work in the national economy.

*Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). The claimant bears the burden of proof at every step except step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

2

## ANALYSIS

Plaintiff argues that the ALJ committed reversible error in her analysis of whether Plaintiff met a Listing at Step 3, in evaluating Plaintiff's testimony of her symptoms, in failing to submit medical evidence to scrutiny, and in evaluating the vocational expert's testimony.

### A. Step 3 Analysis

"At step three the ALJ decides whether the claimant has an impairment that meets or equals one of the categories listed in the agency's Listing of Impairments at 20 C.F.R. pt. 404, subpt. P, app. 1." *Zellweger v. Saul*, 984 F.3d 1251, 1253 (7th Cir. 2021). If the criteria for a Listing are satisfied or medically equaled, then the claimant is determined to be disabled.

Plaintiff argues that the ALJ erred by providing only a perfunctory analysis of Listing 14.02 and by failing to evaluate Plaintiff under Listing 14.10. Listing 14.02 for systemic lupus erythematosus (SLE) requires:

> A. Involvement of two or more organs/body systems, with:
> 1. One of the organs/body systems involved to at least a moderate level of severity; and
> 2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss

or

> B. Repeated manifestations of SLE, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
> 1. Limitation of activities of daily living.
> 2. Limitation in maintaining social functioning.
> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. pt. 404, subpt. P, app. 1 § 14.02. Listing 14.10 for Sjögren's syndrome is substantially similar to Listing 14.02 and requires:

> A. Involvement of two or more organs/body systems, with:
> 1. One of the organs/body systems involved to at least a moderate level of severity; and
> 2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss

3

or
- B. Repeated manifestations of Sjögren's syndrome, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
  1. Limitation of activities of daily living.
  2. Limitation in maintaining social functioning.
  3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. pt. 404, subpt. P, app. 1 § 14.10.

In considering Listing 14.02, the ALJ found, in part, that "[t]he evidence does not establish at least two constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss." (AR 21).

At Step 3 of the sequential process, Plaintiff bore the burden of proof. In her brief, Plaintiff has neither argued that the ALJ was incorrect in finding that Plaintiff does not have at least two constitutional symptoms or signs, nor identified evidence supporting the same, except for a string citation of pages in the record to support a number of things, one of which being that Plaintiff had fevers. She has identified evidence of two or more body systems or organs being involved, and argues that the "mild-moderate" mitral valve regurgitation meets the requirement of one involved organ or body system being moderately severe. (Br. at 14-15). However, this is only one portion of the Listing's requirements. The lack of two or more constitutional symptoms or signs prevents Listing 14.02 being met under either paragraph A or paragraph B.

Plaintiff, in her reply, states that "the record was replete with evidence . . . [of] signs of SLE like severe fatigue and malaise," (Rep. at 3, ECF No. 16), but arguments raised in reply briefs are waived. *See Mendez v. Perla Dental*, 646 F.3d 420, 423-24 (7th Cir. 2011). Furthermore, Plaintiff cites only pages 14-15 of her opening brief in support, and those pages do not discuss severe fatigue and malaise or evidence in the record of either. In the entirety of her opening brief beyond pages 14-15, Plaintiff does not discuss evidence of malaise at all.

4

In any event, Plaintiff failed in her opening brief to put the Commissioner fairly on notice that she believed that she met the "two constitutional symptoms or signs" prong of Listing 14.02. *See Kendrick v. Barnhart*, No. 1:04CV0292, 2005 WL 1025777, at *12 (Apr. 18, 2005) (citing *Tenner v. Zurek*, 169 F.3d 328, 330 (7th Cir. 1999); *Border v. City of Crystal Lake*, 75 F.3d 270, 274 (7th Cir. 1996)). Plaintiff's argument is that she met the involved body systems or organs prong which, even if true, does not negate the constitutional symptoms or signs finding, which is outcome determinative.

Therefore, Plaintiff has not presented an unwaived argument that would show the ALJ's Step 3 determination to be erroneous regarding Listing 14.02. The Court will not order remand on this basis.

Regarding Listing 14.10, the ALJ's failure to address this Listing is harmless error, as the ALJ's finding that Plaintiff does not have at least two of the constitutional symptoms or signs would prevent Plaintiff from meeting Listing 14.10 just as the ALJ found it to prevent Plaintiff from meeting Listing 14.02. This falls well within the realm of harmless error, as the Court can predict with great confidence that the ALJ would reach the same result at Step 3 if the Court remanded for an explicit consideration of Listing 14.10. *See Butler v. Kijakazi*, 4 F.4th 498, 504 (7th Cir. 2021) (describing the harmless error standard).

The Court finds no basis for remand at Step 3.

### B. Symptom Testimony

Plaintiff argues that the ALJ erred in evaluating Plaintiff's symptoms of fatigue and in concluding that those symptoms were not supported by objective medical evidence. An ALJ's subjective symptom analysis will be afforded "considerable deference" and will be overturned only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (citations

5

omitted). In addressing Plaintiff's subjective symptoms, the ALJ must consider all the evidence in the record, including daily activities. 20 C.F.R. § 404.1529(c)(3). As long as the ALJ's subjective symptom determinations have some support in the record and are not patently wrong, they are upheld. *See Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995).

Plaintiff's March 2020 testimony was that she used to do chores until the previous three to four months when she began to experience vertigo and shoulder problems. The ALJ used this testimony to support the finding that any fatigue, joint pain, or other symptoms Plaintiff was experiencing prior to the onset of the vertigo and shoulder problems "did not result in significant limitations to perform household chores." (AR 25). This is in direct conflict with Plaintiff's report of her daily activities, which indicate that her daily activities constantly accommodated her fatigue. For example, she indicated on October 29, 2018, that "*[i]f I feel good* I'll start laundry or go to grocery with my mom" but also that she would "[s]ometimes take early nap." (AR 225 (emphasis added)). Her family would help with supper and clean-up. (AR 225, 227). Whether Plaintiff would (with her mother) watch her grandson depended on how she felt on a particular day. (AR 226). She needed to sit down and rest after showering because she would get tired. (AR 226). She would perform housework if she felt up to it on a given day, but she would take a lot of breaks and was fatigued most days. (AR 227). She specifically noted that she required rest breaks when participating in her hobbies and interests, which included taking short walks. (AR 229).

That Plaintiff's vertigo and shoulder problems became severe enough to stop her from performing chores in 2020 does not support the conclusion that Plaintiff had no significant limitations in her ability to perform chores prior to that date. Indeed, the October 2018 function report indicates that Plaintiff's daily activities, including chores, were significantly hampered by Plaintiff's fatigue. There is no logical bridge from the evidence that Plaintiff could no longer

perform chores *at all* to the conclusion that prior to that date the chores could be performed *without limitation*. There is evidence supporting the opposite conclusion, that is, that Plaintiff was limited in how and for how long she could perform household chores before she became completely unable to perform the chores at all. This error requires remand for a new evaluation of how Plaintiff's fatigue affected her RFC.

### C. Scrutiny of New Medical Evidence

Plaintiff argues that the ALJ erred by relying on outdated medical assessments and by failing to submit new medical evidence to scrutiny. Plaintiff asserts that this new evidence was of recurrent skin rashes linked to SLE, thrombophlebitis of the upper extremities due to infusions for SLE treatment, recurrent infections due to those infusions, bilateral upper extremity paresthesia and cervical radiculopathy, episodes of vertigo and migraine, benign gastric mucosa with chronic inflammation and slight regenerative changes, and vision problems. Specifically, Plaintiff asserts that her "significant fatigue, exertional chest pain, palpitations, joint pain, upper extremity pain, and abdominal pain and discomfort" support a finding that she cannot perform the walking, standing, lifting, or carrying requirements of light work. (Pl.'s Br. 9-10, ECF No. 12).

An ALJ should request a new expert opinion to interpret new and *potentially decisive* medical evidence, *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014), but new records alone do not impose this burden. "If an ALJ were required to update the record any time a claimant continued to receive treatment, a case might never end." *Keys v. Berryhill*, 679 F. App'x 477, 481 (7th Cir. 2017). The relevant inquiry is whether the new medical evidence "changes the picture" so much that an ALJ cannot evaluate the significance of the information. *Kemplen v. Saul*, 844 F. App'x 883, 887 (7th Cir. 2021).

7

Because this case is being remanded on other grounds, the Court declines to provide full analysis on this point in the interest of judicial economy. However, the Court notes that a plaintiff wishing to prevail on an argument regarding new, potentially decisive evidence should articulate how the new evidence sufficiently changes the picture to warrant a new opinion from an expert.

### D. Vocational Expert Testimony

Plaintiff asserts that the ALJ erred when evaluating the vocational expert testimony in that the expert testified that employers do not tolerate more than one absence per month. Plaintiff considers this to be inconsistent with her Benlysta infusions, which she receives every four weeks, that is, slightly more frequently than once per month. However, the vocational expert was speaking of unexcused absences, not of scheduled leave for medical purposes (AR 72-73). Indeed, if the employer standard for absenteeism were as Plaintiff describes, then even a pre-approved, three-day vacation would be disallowed. This argument fails to establish a basis for remand.

### CONCLUSION

Because the ALJ erred in evaluating the evidence of Plaintiff's fatigue, the Court hereby **GRANTS** the relief requested in Plaintiff's Opening Brief [DE 12], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further administrative proceedings consistent with this opinion and order.

SO ORDERED on July 13, 2022.

s/ Joseph S. Van Bokkelen  
JOSEPH S. VAN BOKKELEN, JUDGE  
UNITED STATES DISTRICT COURT